# Exhibit 1

| | |
|---|---|
| DISTRICT COURT, JEFFERSON COUNTY, COLORADO<br>Court Address: 100 Jefferson County Parkway<br>Golden, CO 80401 | DATE FILED: December 18, 2017 2:20 PM<br>FILING ID: 9F1C17DCBE2F1<br>CASE NUMBER: 2017CV31984 |
| **Plaintiffs:** CLIFTON BO CLEVELAND ABBOTT, CLIFTON CLEVELAND ABBOTT, W. SCOTT ABBOTT, and JILL ABBOTT<br><br>v.<br><br>**Defendants:** PROSPECT AGENCY GROUP, INC., a Wyoming Corporation, and CHRISTOPHER GREGG THOMAS, individually. | ▲ **COURT USE ONLY** ▲ |
| Attorneys for Plaintiffs:<br><br>Name:     David Lichtenstein (#11408)<br>          Matt Molinaro (#47814)<br>Address:  Law Office of David Lichtenstein, LLC<br>          1556 Williams Street, Suite 100<br>          Denver CO 80218-1661<br>Phone No.: (303) 831-4750<br>Fax No.:   (303) 863-0835<br>E-mail:    dave@lichtensteinlaw.com<br>           matt@lichtensteinlaw.com | Case No.:<br><br>Div.: |
| **COMPLAINT** ||

Plaintiffs complain as follows:

1. Plaintiff Clifton Bo Cleveland Abbott (Bo Abbott) is a resident of Arvada, Jefferson County, Colorado.

2. Plaintiff Clifton Cleveland Abbott (Clifton Abbott) is a resident of Liberal, Kansas.

3. Clifton Abbott is Bo Abbott's father

4. Plaintiffs W. Scott Abbott and Jill Abbott (Scott and Jill Abbott) are residents of Ft. Gibson, Oklahoma.

5. W. Scott Abbott is Clifton Abbott's cousin.

6. Defendant Christopher Gregg Thomas (Thomas) is a resident of Bozeman, Montana.

7. Defendant Prospect Agency Group, Inc. (Prospect) is a Wyoming Corporation authorized to do business in Colorado.

8. Prospect is engaged in the business of selling property and casualty insurance policies.

9. At all relevant times, Prospect conducted active operations in Colorado.

10. Since approximately December, 2016, Prospect has conducted active operations at an office in Lakewood, Jefferson County, Colorado.

11. At all relevant times, Thomas has been the chief executive officer of Prospect.

12. In approximately November, 2016, Thomas became the controlling shareholder of Prospect.

13. Venue is proper because this case concerns contracts to be performed in Jefferson County, including:

    a. A promissory note payable to Bo Abbott, a Jefferson County resident;

    b. An agreement by Scott and Jill Abbott to invest money in Prospect to allow Prospect to open its office in Jefferson County, which agreement recites that jurisdiction and venue are proper in Colorado courts; and

    c. An agreement under which Bo Abbott rendered services to Prospect in Jefferson County and received compensation in Jefferson County.

14. Venue is also proper because this action alleges tortious acts committed in Jefferson County, including acts of common-law fraud and violations of the Colorado Securities Act.

## GENERAL ALLEGATIONS

15. Bo Abbott was hired by Thomas to begin employment by Prospect at its Thornton, Colorado office in September 2015.

16. Bo Abbott's employment by Prospect involved acting as an insurance agent and assisting in the operations of Prospect's Thornton and Lakewood offices.

17. Bo Abbott was compensated by Prospect with base salary and commissions.

18. Bo Abbott owns 2% of the shares of Prospect.

19. In August 2016, Prospect executed a Promissory Note (Note) to Bo Abbott in consideration for his securing $40,000 in funding for Prospect.

20. The Note bore 10% interest from the date of execution until it became due in April 2017.

21. The Note provided that Bo Abbott is entitled to recover his costs of collection, including reasonable attorney fees.

22. The Note was personally guaranteed by Thomas.

23. The Note was collateralized by a security interest in favor of Bo Abbott in all of Thomas's shares in Prospect.

24. On November 22, 2016, Scott and Jill Abbott entered into an Agreement for Mutual Business Interest and Revenue Sharing (Scott and Jill Abbott Revenue Sharing Agreement) under which Scott and Jill Abbott invested $40,000 in Prospect.

25. The purpose of the Scott and Jill Abbott Revenue Sharing Agreement was to allow Prospect to finance and open its Lakewood, Colorado office.

26. The Scott and Jill Abbott Revenue Sharing Agreement provided that the $40,000 was to be repaid to Scott and Jill Abbott with monthly payments of 5% of an amount equal to the gross operating revenue of the Lakewood office less customer insurance premiums held in trust for the carriers until the $40,000 was repaid "separate and above the 5% monthly payment."

27. Prospect's obligations under the Scott and Jill Abbott Revenue Sharing Agreement were secured by a security interest in "the office location, its furnishings, assets, and bank accounts."

28. Thomas guaranteed Prospect's obligations under the Scott and Jill Abbott Revenue Sharing Agreement.

29. The Scott and Jill Abbott Revenue Sharing Agreement recited that a copy of a Uniform Commercial Code UCC-1 form filing was attached to the agreement.

30. The UCC-1 filing was not in fact attached to the Scott and Jill Abbott Revenue Sharing Agreement.

31. In or about February 2017, Clifton Abbott advanced $40,000 to Prospect under a separate Agreement for Mutual Business Interest and Revenue Sharing (Clifton Abbott Revenue Sharing Agreement).

32. The purpose of the Clifton Abbott Revenue Sharing Agreement was to allow Prospect to finance and open offices in Montana and Washington state.

33. The Clifton Abbott Revenue Sharing Agreement provided that the $40,000 was to be repaid to Clifton Abbott with monthly payments of 5% of an amount equal to the gross operating revenue of the Montana and Washington offices less customer insurance premiums held in trust for the carriers until the $40,000 was repaid "separate and above the 5% monthly payment."

34. The Clifton Abbott Revenue Sharing Agreement further provided that the offices were to be opened and occupied within no more than 90 days of the effective date of the Clifton Abbott Revenue Sharing Agreement.

35. Prospect's obligations under the Clifton Abbott Revenue Sharing Agreement were secured by a security interest in the office location, its furnishings, assets, and bank accounts.

36. Prospect's assets, as referenced in the Revenue Sharing Agreements, included its commissions receivable from insurance carriers.

37. In February 2017, Thomas advised Bo Abbott that Prospect had cash flow needs that required further infusions of capital.

38. In February 2017, Prospect refinanced two vehicles, a 2016 Tahoe, VIN No. 1GNSKCKC9GR386636 (Tahoe) and a Nissan 3500 van, VIN No. 5BZAF0AA0GN851321 (Nissan).

39. In February 2017, Thomas had been using the Tahoe for both Prospect's business purposes and for his personal purposes.

40. In February 2017, Thomas had been using the Nissan in part for business purposes.

41. The refinancing of the vehicles resulted in Bo Abbott having sole title to the Tahoe, Prospect and Bo Abbott jointly taking title to the Nissan, and Bo Abbott being obligated on the loans on both vehicles.

42. As of November 30, 2017, the debt on the Tahoe was $49,597.62 and the debt on the Nissan was $32,330.91.

43. As of no later than November 30, 2017 neither the Tahoe nor the Nissan was being used for Prospect's business operations.

4

44. In or about August 2017, Thomas obtained a second loan on the Nissan, apparently by concealing the existence of the loan to the first lender.

45. In or about September 2017, Thomas obtained a third loan on the Nissan, apparently by concealing the existence of the first and second loans from the third lender.

46. On or about March 1, 2017, Patrick Ridens invested $50,000 in Prospect under a separate Agreement for Mutual Business Interest and Revenue Sharing, which was intended to allow Prospect to open an office in Oklahoma.

47. Prospect never opened an office in Oklahoma.

48. In May 2017, Thomas requested that Bo Abbott obtain three credit cards for Prospect on which he would be personally liable in order to obtain more credit, which Thomas represented would be was needed for Prospect's operations.

49. Bo Abbott understood that the credit was intended to serve as short-term financing until Prospect received commissions from insurance carriers early the following month.

50. Thomas, and to a lesser extent Bo Abbott, used the credit cards to pay outstanding invoices, and make purchases and obtain cash advances for Prospect's business purposes.

51. Prospect has failed to repay the balances on the credit cards as of the date of this Complaint.

52. As of November 30, 2017, the combined balance on the three credit cards was $47,471.67.

53. On September 4, 2017, Bo Abbott terminated his services to Prospect.

54. As of September 4, 2017, Prospect owed Bo Abbott $13,324 in compensation.

55. Despite demand, Thomas has refused to allow Plaintiffs to view company books and records, and otherwise provide information as to whether the proceeds of the vehicle refinancings, credit card advances, and other investments by Plaintiffs have been used for legitimate company purposes.

56. Thomas has advised Bo Abbott that he is attempting to sell all of the assets of Prospect.

57. Thomas has advised Bo Abbott that he is not using the Tahoe or the Nissan for business purposes.

58. Bo Abbott has notified Thomas of his right to take possession of Thomas's shares of Prospect, and demanded possession and transfer of those shares.

59.   The transfer of those shares would permit Bo Abbott to act any executive capacity with Prospect or appoint someone to act on his behalf.

60.   As Bo Abbott has the right to be and is now a majority shareholder, Bo Abbott has notified Thomas that he has no right or power to sell the company's assets.

61.   Plaintiffs have demanded that Thomas allow inspection of all of Prospect's financial records, including financial records of Prospect's Montana and Colorado operations, and all documentation of financial obligations of Prospect, including security agreements and financing statements.

62.   Bo Abbott has demanded return of the Tahoe, and that the Nissan be returned to its lienholder.

63.   Defendants have refused or declined to allow inspection of their financial records.

64.   Defendants have refused or declined to return the Tahoe to Bo Abbott.

65.   Defendants have refused or declined to return the Nissan to any of its lienholders.

66.   Thomas has refused or declined to transfer his shares of Prospect to Bo Abbott.

### FIRST CLAIM FOR RELIEF
(Bo Abbott Promissory Note – both Defendants)

67.   The foregoing allegations are realleged and incorporated by reference.

68.   Prospect and Thomas are in default of their obligation to repay to Bo Abbott the entire principal, and interest, on the $40,000 Note.

69.   Bo Abbott has suffered damages as a result of the breach, consisting of the principal and interest on the Note, and interest under note, or under applicable law, accruing since the Note matured.

### SECOND CLAIM FOR RELIEF
(Scott and Jill Abbott Revenue Sharing Agreement – both Defendants)

70.   The foregoing allegations are realleged and incorporated by reference.

71.   Prospect and Thomas are in default of payments due under the Scott and Jill Abbott Revenue Sharing Agreement.

72.   As a result of Prospect's and Thomas's default under the Scott and Jill Abbott Revenue Sharing Agreement, Scott and Jill Abbott have been damaged in an amount equal to the amount of past-due payments.

73. Under a reasonable interpretation and implied term of the Scott and Jill Abbott Revenue Sharing Agreement, Scott and Jill Abbott should be entitled to collect the entire principal amount of $40,000 they invested under the agreement.

74. Scott and Jill Abbott are entitled to foreclose on their security interests in the furnishings, assets, and bank accounts of Prospect's Colorado office.

### THIRD CLAIM FOR RELIEF
(Clifton Abbott Revenue Sharing Agreement – both Defendants)

75. The foregoing allegations are realleged and incorporated by reference.

76. Prospect and Thomas are in default of payments under the Clifton Abbott Revenue Sharing Agreement.

77. Prospect and Thomas breached the Clifton Abbott Revenue Sharing Agreement by failing to open an office in Washington state.

78. As a result of Prospect's and Thomas's defaults under the Clifton Abbott Revenue Sharing Agreement, Clifton Abbott has been damaged in an amount equal to the amount of past-due payments.

79. Under a reasonable interpretation and implied term of the Clifton Abbott Revenue Sharing Agreement, Clifton should be entitled to collect the entire principal amount of $40,000 he invested under the agreement.

80. Clifton Abbott is entitled to foreclose on his security interest in the furnishings, assets, and bank accounts of Prospect's Montana office.

### FOURTH CLAIM FOR RELIEF
(Bo Abbott – credit card advances – Prospect)

81. The foregoing allegations are realleged and incorporated by reference.

82. Prospect's obligation to Bo Abbott to repay the advances on the three credit cards Bo Abbott obtained for Prospect in May 2017 is past due.

83. As a result of Prospect's breach of its agreement to repay the advances, Bo Abbott has been damaged by the amounts due to the credit card issuers, and interest he has incurred on the advances.

### FIFTH CLAIM FOR RELIEF
(Bo Abbott – compensation for services – Prospect)

84. The foregoing allegations are realleged and incorporated by reference.

85.   Prospect has breached its obligation to compensate Bo Abbott for his services.

86.   As a result of Prospect's breach, Bo Abbott has been damaged in the amount of $13,324.

### SIXTH CLAIM FOR RELIEF
(Bo Abbott – unjust enrichment – Prospect)

87.   The foregoing allegations are realleged and incorporated by reference.

88.   Bo Abbott advanced funds to Prospect.

89.   Bo Abbott advanced the funds to Prospect without a specific agreement as to payment, but with the reasonable expectation that he would be repaid.

90.   Bo Abbott rendered services to Prospect.

91.   Bo Abbott rendered the services without a specific agreement as to payment, but with a reasonable expectation that he would be paid reasonable value of his services.

92.   Prospect requested and accepted the funds and services expecting to pay for them.

93.   Bo Abbott has been damaged by the amount of the funds advanced and the reasonable value of the services rendered.

### SEVENTH CLAIM FOR RELIEF
(Colorado Securities Act – both Defendants)

94.   The foregoing allegations are realleged and incorporated by reference.

95.   The Note was a security within the meaning of C.R.S. § 11-51-201(17).

96.   The Scott and Jill Abbott Revenue Sharing Agreement was a security within the meaning of C.R.S. § 11-51-201(17).

97.   The Clifton Abbott Revenue Sharing Agreement was a security within the meaning of C.R.S. § 11-51-201(17).

98.   The cash advances made by Bo Abbott were securities within the meaning of C.R.S. §11-51-201(17).

99.   Defendants made statements of material facts in connection with the sale of the securities, including:

    a. that the retention rate of policies sold by Prospect was approximately 55%;

    b. that Prospect's EZLynx agency management system was capable of producing a retention rate of 55% or otherwise adequately perform the tracking, reporting and other management functions of Prospect; and

    c. that that Defendants intended to provide information to Plaintiffs on a regular basis information about Prospect's operating revenues from its Colorado and Montana operations so that Plaintiffs could verify whether payments made to them under the revenue sharing agreements were in the correct amounts.

100.    The statements referenced in the preceding paragraph were untrue in material respects.

101.    Prospect's retention rate was in fact approximately 40%.

102.    Defendants made the statements and representations about untrue material facts either recklessly, knowingly, or with an intent to defraud Plaintiffs.

103.    Defendants failed to advise Plaintiffs, and concealed from Plaintiffs:

    a. The terms of a $215,000 loan from Super G to Prospect taken out in or about December 2016 or January 2017;

    b. That Prospect was a defendant in a lawsuit seeking monetary recoveries and other relief filed by Protect Plus Insurance Brokerage, Inc., in June 2016 in Kings County, New York, Supreme Court asserting claims for, among other things, breach of contract, conversion of the plaintiff's book of business, and tortious or negligent interference with prospective economic benefit and with contract, and alleging among other things various that Thomas made various misrepresentations, that Prospect was operating its insurance business without proper licenses, with inadequate financing, and without an adequate management system or back office support, that Prospect improperly withheld commission payments, and that Thomas did not have sufficient experience to operate the business of Prospect and its processor unincorporated business;

    c. That Prospect in February 2016 as added as a defendant in a lawsuit filed in Oklahoma County, Oklahoma by Oklahoma Agents Alliance, LLC, alleging that Prospect tortuously interfered with an insurance service contract and helped a party to the contract conceal competing business from Oklahoma Agents Alliance, LLC;

    d. That Prospect and/or Thomas were Defendants in a similar lawsuit filed in Mecklenberg County, North Carolina in early 2017;

  e. That Thomas, and possibly Prospect, was obligated to Matt Mitchell under a stock purchase agreement in the approximate amount of $98,000;

  f. That Thomas and Prospect were obligated on other working capital loans and obligations, including:

    i. A loan made by National Funding in the approximate amount of $23,000;

    ii. A loan made by Swift Financial LLC in the approximate amount of $15,000;

    iii. A loan made by an entity believed to be Yellowstone Capital in the approximate amount of $9,000;

    iv. A loan made by Kabbage, Inc. in the approximate amount of $7,000;

    v. An obligation to Escrow.com in the approximate amount of $10,000; and

    vi. A loan made by AMEX in the approximate amount of $16,000;

  g. That the $40,000 advanced by Clifton Abbott was insufficient to open offices in both Montana and Washington; and

  h. That Thomas intended to use the Tahoe substantially for personal purposes.

104. The facts set forth in the preceding paragraph were necessary in order to make other statements, in light of the circumstances under which they were made, not misleading in connection with the sale of the securities.

105. Plaintiffs did not know, and in the exercise of reasonable care could not have known, of the untruths or omissions described above.

106. Plaintiffs relied upon the existence of the misrepresented facts and the nonexistence of the undisclosed and concealed facts to their detriment.

107. Plaintiffs would not have made their investments in Prospect but for Thomas's misrepresentations and failure to disclose material facts.

108. Defendants' conduct caused the Plaintiffs to suffer monetary losses, including the loss or diminution of the value of their investments.

109. Plaintiffs are entitled to recover from all of the Defendants the lost value of their investments plus interest at the statutory rate, reasonable attorneys' fees and costs under C.R.S. §11-51-604(1), and such other legal or equitable relief that the court deems appropriate.

## EIGHTH CLAIM FOR RELIEF
(Fraud – both Defendants)

110.     The foregoing allegations are realleged and incorporated by reference.

111.     Defendants made the representations of material fact set forth in paragraph 99 above knowing them to be false, or not knowing whether they were true or false.

112.     Defendants made the representations with the intent that the Plaintiffs would rely on the representations.

113.     Plaintiffs justifiably relied on the representations.

114.     Plaintiffs' reliance caused damages in the amount of their investments or the diminution in value of the investments.

## NINTH CLAIM FOR RELIEF
(Fraudulent concealment – both Defendants)

115.     The foregoing allegations are realleged and incorporated by reference.

116.     Defendants had a duty to disclose the material facts that they concealed or failed to disclose, as set forth in paragraph 102 above.

117.     Defendants concealed or failed to disclose those facts with the intent of creating a false impression of the actual facts in the minds of the Plaintiff's

118.     Defendants concealed the facts with the intent that the Plaintiffs make investments in Prospect, which they would or might not have done if they knew the actual facts.

119.     Plaintiffs made the investments in justifiable reliance on the assumption that the concealed and undisclosed facts did not exist or were different from what they actually were.

120.     Plaintiffs' reliance caused damages in the amount of their investments or the diminution in value of the investments.

## TENTH CLAIM FOR RELIEF
(Civil theft – both Defendants)

121.     The foregoing allegations are realleged and incorporated by reference.

122.     Thomas and Prospect intended to deprive Plaintiffs permanently of the use or benefit of the amounts they invested.

123.     Thomas and Prospect knowingly used Plaintiffs' investments in such a manner as to deprive them personally of the use or benefits of their investments.

11

124. As a result of Thomas's and Prospect's conduct, Plaintiffs are entitled to recover three times the value of their investments under C.R.S. §18-4-405.

## ELEVENTH CLAIM FOR RELIEF
(Replevin – both Defendants)

125. The foregoing allegations are realleged and incorporated by reference.

126. Bo Abbott is entitled to the return of the Tahoe.

127. Bo Abbott is entitled to recover Thomas's shares in Prospect and to have them transferred to him.

128. Defendants have wrongfully deprived Plaintiff of property he is entitled to possess.

129. As a result of Defendants' actions, Plaintiff has suffered damages, including the diminution in the value of the Tahoe, the loss of its use.

130. Bo Abbott has no adequate remedy at law.

131. This Court has jurisdiction to order delivery and transfer of the Tahoe and Thomas's shares pursuant to Rule 104, Colorado Rules of Civil Procedure and this Court's general equitable powers.

## TWELFTH CLAIM FOR RELIEF
(Permanent injunction – both Defendants)

132. The foregoing allegations are realleged and incorporated by reference.

133. If Thomas is permitted to sell assets of Prospect it is likely he will remove the proceeds beyond the jurisdiction of this court and not apply them to Defendants' obligations to Plaintiffs.

134. If Thomas is permitted to sell assets of Prospect Plaintiffs will suffer real, immediate and irreparable injury.

135. Plaintiffs have no plain, speedy or adequate remedy at law.

## THIRTEENTH CLAIM FOR RELIEF
(Receiver -- Prospect)

136. The foregoing allegations are realleged and incorporated by reference.

137. Plaintiffs have a right to Prospect's assets, including accounts receivable and the operating revenues of Prospect from its Colorado and Montana operations, and its other assets that secure Prospect's obligations to the Plaintiffs.

138. Thomas has possession and control over the application of Prospect's receivables, operating revenues and other assets.

139. Prospect's receivables, operating revenues and other assets are in danger of being lost, removed beyond the jurisdiction of the court, or materially injured or impaired.

140. Plaintiffs are entitled to the appointment of a receiver under Rule 66, Colorado Rules of Civil Procedure.

**FOURTEENTH CLAIM FOR RELIEF**
(Accounting -- Prospect)

141. The foregoing allegations are realleged and incorporated by reference.

142. Prospect has withheld and continues to withhold amounts due to Scott, Jill, and Clifton Abbott under their respective revenue sharing agreements, the exact amounts of which are unknown because Defendants, despite demand, have failed and refused to provide relevant financial information in order to conceal the amounts owed and avoid paying them what is due.

143. Plaintiffs have no access to the relevant financial information unless defendanats are ordered to provide it.

144. Plaintiffs have no adequate remedy at law.

145. Defendants should be ordered to provide an accounting of all financial information necessary to determine the amounts owed to Scott, Jill and Clifton Abbott under their respective revenue sharing agreements.

**DEMAND FOR RELIEF AND JUDGMENT**

Plaintiffs therefore request the following judgment and relief:

A. Judgment in favor of all Plaintiffs and against Defendants Christopher Gregg Thomas and Prospect Agency Group, Inc. for all damages incurred by Plaintiffs;

B. Judgment in favor of Clifton Bo Abbott for reasonable attorney fees incurred in collecting principal and interest on the Note;

C. Attorney fees under the Colorado Securities Act incurred by all Plaintiffs;

D. Treble damages under C.R.S. §18-4-405;

      E.      An order requiring Christopher Gregg Thomas to transfer ownership of all of his shares of stock in Prospect Agency Group, Inc. to Bo Abbott;

      F.      An order requiring Defendants to return the Tahoe to Bo Abbott;

      G.      A permanent injunction prohibiting Christopher Gregg Thomas and Prospect Agency Group, Inc. from selling assets of Prospect without satisfying Plaintiffs' security interests;

      H.      An order judicially foreclosing on and authorizing the sale of the assets of Prospect's Colorado office for the use and benefit of Scott and Jill Abbott to satify their security interest under the Scott and Jill Abbott Revenue Sharing Agreement;

      I.      An order judicially foreclosing on and authorizing the sale of the assets of Prospect's Montana office for the use and benefit of Clifton Abbott to satify his security interest under the Clifton Abbott Revenue Sharing Agreement;

      J.      An order appointing a receiver for Prospect Agency Group, Inc.;

      K.      An order requiring Prospect to provide an accounting of all financial information necessary to determine the amounts owed under the Scott and Jill Abbott Revenue Sharing Agreement and the Clifton Abbott Revenue Sharing Agreement;

      L.      Prejudgment and post-judgment interest; and

      M.      Such other legal and equitable relief as the Court deems proper.

                                    This document, with original or scanned signatures, is available for inspection at the office of undersigned counsel.

                                    s/David Lichtenstein
                                    David Lichtenstein
                                    Matt Molinaro
                                    *Attorneys for Plaintiffs*

Addresses of Plaintiffs:

Clifton Bo Cleveland Abbott
15316 W. 94th Avenue
Arvada CO 80007

Clifton Cleveland Abbott
2431 Lilac Dr
Liberal, KS 67901

W Scott Abbott and Jill Abbott
350 Donkey Ln.
Fort Gibson, OK 74434